

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-1-2004

# Bouriez v. Carnegie Mellon Univ

Precedential or Non-Precedential: Precedential

Docket No. 03-1709P

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Bouriez v. Carnegie Mellon Univ" (2004). *2004 Decisions.* Paper 897.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/897

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

_____

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

No. 03-1709
_____

CHRISTIAN BOURIEZ;
MONTANELLE BEHEER B.V.,

Appellants,

vs.

CARNEGIE MELLON UNIVERSITY
_____

APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF
PENNSYLVANIA

(D.C. No. 02-cv-02104)

District Judge:
The Honorable Arthur J. Schwab
_____

ARGUED
JANUARY 27, 2004

BEFORE:
NYGAARD and FUENTES,
Circuit Judges, and
O'NEILL,* District Judge.

_____

\* Honorable Thomas N. O'Neill,
Jr., Senior District Judge for the United
(continued...)

(Filed: March 1, 2004)

_____

James A. Vollins, Esq. (Argued)
Squire, Sanders & Dempsey
127 Public Square
4900 Key Tower
Cleveland, OH 44114-1304
          Counsel for Appellants


George E. Yokitis, Esq. (Argued)
DeForest, Koscelnik & Yokitis
436 Seventh Avenue
3000 Koppers Building
Pittsburgh, PA 15219
          Counsel for Appellee

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

Christian Bouriez and Montanelle
Beheer B.V. (collectively referred to as
"Bouriez") appeal the District Court's
order compelling arbitration and
dismissing their case. We will reverse
and remand.

_____

(...continued)
States District Court for the Eastern
District of Pennsylvania, sitting by
designation.

I.

In 1996, Carnegie Mellon University entered into an agreement (the "1996 Agreement") with Zeta Projects Limited. Under the terms of this Agreement, Zeta Projects would fund certain of Carnegie Mellon's research projects. In 1997, Governors Refining Technologies assumed Zeta Projects' position in the 1996 Agreement. Governors Refining was a partially owned subsidiary of Governors Technologies Corp.

In 1999, Carnegie Mellon approached Bouriez about investing in a research project ("the Project") that was being conducted under the 1996 Agreement.[1] According to Bouriez, Carnegie Mellon represented to him that they had Proof-of-Concept on the technology at issue. Bouriez agreed to support the Project and did so by investing in, and thereby becoming a shareholder of, Governors Technologies. Governors Technologies then took the $5,000,000 that Bouriez invested and used it to fund the Project.

---

1.     The 1996 Agreement does not specifically lay out research projects, but contemplates that proposals will be submitted pursuant to the terms of that Agreement. The project that Governors Refining was involved in was submitted under this procedure and involved the upgrading of crude petroleum using microwave-enhanced catalytic cracking.

By the end of 2000, Carnegie Mellon was in need of additional funds for the Project. Carnegie Mellon again approached Bouriez and he agreed to assist Carnegie Mellon in finding additional investors. Before finding those investors, the Project underwent an audit and, according to Bouriez, that audit revealed that Carnegie Mellon never had Proof-of-Concept for the Project. As a result of this discovery, Bouriez did not try to find additional investors for the Project and sued Carnegie Mellon. Bouriez claims that Carnegie Mellon made misrepresentations to him about the status of the Project in order to convince him to purchase shares in Governors Technologies and, thereby fund the Project.

Carnegie Mellon filed a motion seeking to compel Bouriez to arbitrate his claims and to have his federal action dismissed. Carnegie Mellon based this motion on the arbitration clause contained in the 1996 Agreement. The clause requires that, "Any dispute or claim arising out of or relating to the Agreement will be settled by arbitration in Pittsburgh, Pennsylvania." App. 24. Neither Bouriez nor Governors Technologies signed this Agreement.

The District Court granted Carnegie Mellon's motion after finding that Bouriez "as agent[] of [Governors Technologies], [is] bound by [his]

2

principal's [Governors Technologies] agreement to arbitrate" and "[Bouriez] embraced the Agreement and directly benefitted therefrom and thus [is] equitable [sic] estopped from avoiding its arbitration clause." App. at 6.

## II.

We have jurisdiction over this appeal under 28 U.S.C. § 1291.[2] We exercise plenary review over the District Court's order compelling arbitration. *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, *Inc.*, 7 F.3d 1110, 1113 (3d Cir. 1993).

The right to a jury trial is a fundamental right that is expressly protected by the Seventh Amendment to the United States Constitution. *Molthan v. Temple Univ. of Com. Sys. of Higher Educ.*, 778 F.2d 955, 963 (3d Cir. 1985). Although the Federal Arbitration Act "establishes a strong federal policy in favor of compelling arbitration over litigation," this Court has held that it is inappropriate to force a party to arbitrate their disputes unless that party agreed to such arbitration. *E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001). A party, however, can be compelled to arbitrate under an agreement, even if he or she did not sign that agreement, if common law principles of agency and contract support such an obligation on his or her part. *Id.* at 194-95.

Generally, the common law theories used to bind a non-signatory to an arbitration clause include third party beneficiary, agency and equitable estoppel. Here, Carnegie Mellon argued, and the District Court accepted, that Bouriez could be compelled to arbitrate under the 1996 Agreement based on the principles of agency and equitable estoppel.

In its agency analysis, the District Court found that Bouriez was an agent of Governors Technologies and, therefore, was bound to arbitrate under the 1996 Agreement. Bouriez raises several factual arguments regarding his status as an agent of Governors Technologies and Governors Technologies' obligation to arbitrate under an agreement assumed, not by Governors Technologies, but by Governors Refining. However, even assuming Bouriez was an agent of Governors Technologies and it was obligated to arbitrate under the 1996 Agreement, this does not mean Bouriez was also obligated to arbitrate his claims.

---

2.　　We note that as its primary form of relief, Carnegie Mellon requested that the District Court compel arbitration and dismiss Bouriez's federal action. We express no opinion as to whether, had Carnegie Mellon requested a stay under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, it would have been proper for the District Court to dismiss this action, and for us to hear an appeal from that dismissal.

3

In *Bel-Ray Co. v. Chemrite*, we held that an agent can only be bound by the agreements of his principal when that principal acted with the agent's actual, implied, or apparent authority. 181 F.3d 435, 445 (3d Cir. 1999). There is no evidence that Governors Technologies, Governors Refining, or any other entity was acting with implied, actual or apparent authority for Bouriez when it agreed to the 1996 Agreement. In fact, the record shows that Bouriez did not even become involved in the Project until 1999, approximately two years after Governors Refining assumed the 1996 Agreement. Therefore, the District Court is incorrect in its conclusion that any agency relationship between Bouriez and Governors Technologies obligated him to arbitrate.

A person may also be equitably estopped from challenging an agreement that includes an arbitration clause when that person embraces the agreement and directly benefits from it. *E.I. Dupont*, 269 F.3d at 199-200. Here, there is simply no evidence in the record to indicate that Bouriez directly benefitted from the 1996 Agreement. At most, the facts show that Bouriez became a minority shareholder in Governors Technologies for the sole purpose of funding the Project. There is no evidence that any benefit the Project would produce would go to him *directly*. In this respect, this case is nearly identical to *Industrial Electronics Corp. of Wisconsin v. iPower Distribution*

*Group., Inc*., 215 F.3d 677 (7th Cir. 2000).

In *Industrial Electronics*, iPower approached Industrial Electronics in an attempt to convince it to join an association of other companies. *Id.* at 678-79. Once established, that association would enter into a franchise agreement with iPower, for iPower to provide computer software that would allow customers to purchase from all members of the association in a single order. *Id.* Industrial Electronics decided to enter into the association, which was created as a limited liability corporation. *Id.* at 679. One year later, the association entered into the intended franchise agreement with iPower. *Id.*

Eventually, Industrial Electronics came to believe that iPower misrepresented certain facts and fraudulently induced Industrial Electronics to enter the association. *Id.* It sued iPower. *Id.* In an attempt to compel arbitration, iPower argued that Industrial Electronics was bound by an arbitration clause that existed in the franchise agreement between iPower and the association. *Id.* The Court of Appeals for the Seventh Circuit correctly observed that Industrial Electronics' claims were not based on the franchise agreement, but on iPower's statements that induced it to enter into the association. *Id.* at 680-81. Thus, Industrial Electronics was not exploiting or directly benefitting from the agreement that contained the arbitration

4

clause, and would not be equitably estopped from avoiding that clause.

The facts here are not distinguishable and we find *Industrial Electronics* persuasive. Bouriez is complaining that Carnegie Mellon wrongly induced him to enter into a shareholder agreement with Governors Technologies. While the purpose of that agreement was that Bouriez could provide money to Governors Technologies that Governors Technologies would use to fund Carnegie Mellon, the fact remains that Bouriez's claims deal with his shareholder agreement, and not the 1996 Agreement. As in *Industrial Electronics*, "A dispute that arises under one agreement may be litigated notwithstanding a mandatory arbitration clause in a second agreement, even where the two agreements are closely intertwined." *Id.* at 681. Such is the circumstance here. The District Court's contrary conclusion fails to acknowledge that Bouriez was one step removed from the 1996 Agreement and, therefore, is not equitably estopped from avoiding the arbitration clause contained in that Agreement.

III.

For the foregoing reasons, we will remand the cause.

_____

5