**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-2146, 10-2358 & 10-2359
_____

CHRISTIAN BOURIEZ; MONTANELLE BEHEER

v.

CARNEGIE MELLON UNIVERSITY,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Civ. No. 2-02-cv-02104)
District Judge:  Hon. Arthur J. Schwab

Submitted Under Third Circuit LAR 34.1(a)
May 13, 2011

Before:  SMITH, CHAGARES, and VANASKIE, Circuit Judges.

(Filed June 7, 2011)

_____

OPINION
_____

CHAGARES, Circuit Judge.

Carnegie Mellon University ("CMU") appeals the District Court's grant of

summary judgment in favor of Christian Bouriez and his corporate alter-ego Montanelle

Beheer B.V. (collectively, "Bouriez") with respect to Bouriez's negligent

misrepresentation claim.  Bouriez conditionally cross appeals the District Court's

dismissal of his fraudulent misrepresentation claim.  For the reasons that follow, we will

vacate and remand.

I.

We write for the parties' benefit and recite only the facts essential to our

disposition.  We also assume the parties' familiarity with the two previous opinions

issued by this Court in this matter.  See Bouriez v. Carnegie Mellon Univ., 585 F.3d 765

(3d Cir. 2009) ("Bouriez II"); Bouriez v. Carnegie Mellon Univ., 359 F.3d 292 (3d Cir.

2004) ("Bouriez I").

CMU is a non-profit research university located in Pittsburgh, Pennsylvania.  In

1997, an unincorporated nonacademic division of CMU was in the process of developing

a "microwave-enhanced catalytic cracking project" (the "microwave technology").

Bouriez II, 585 F.3d at 767.  Later that year, CMU entered into a contractual relationship

(the "sponsorship agreement") with third parties Governors Technologies Corporation

and Governors Refining Technologies, LLC (collectively, "Governors").  Pursuant to the

terms of the sponsorship agreement, Governors agreed to fund the commercialization of

the microwave technology in exchange for the licensing rights.

Bouriez lives in London, England.  In 1999, CMU approached Bouriez in order to

solicit his investment in the microwave technology.  After meeting with representatives

of both CMU and Governors, Bouriez agreed to invest $5 million in Governors.  Bouriez

never entered into a contractual relationship with CMU.

2

Bouriez subsequently lost his investment, and both Bouriez and Governors claimed that CMU had induced their investments by making false representations about the microwave technology. In December 2002, Bouriez initiated this action against CMU, asserting claims for fraudulent misrepresentation and negligent misrepresentation.[1] Bouriez did not file a complaint against Governors. In January 2003, CMU filed a demand for arbitration against both Bouriez and Governors, invoking an arbitration provision of the sponsorship agreement. CMU also filed a motion before the District Court to compel Bouriez to join that arbitration, a motion that Bouriez opposed. The District Court granted the motion, but this Court reversed in Bouriez I due to the lack of a contractual relationship between CMU and Bouriez. 359 F.3d 292. As a result, only CMU and Governors proceeded to arbitration, while the dispute between CMU and Bouriez remained before the District Court.

On August 25, 2006, the arbitrator issued a final award against CMU and in favor of Governors (the "Arbitration Award"). Appendix ("App.") 109-148. The Arbitration Award found, inter alia, that CMU had made negligent misrepresentations regarding the feasibility of the microwave technology to Governors; that the contract between the two parties should be rescinded; and that CMU should return Governors' investment, with interest and costs, and that all rights, title, and interest in the microwave technology should revert to CMU. In deciding against CMU on the claim for negligent misrepresentation, the Arbitration Award determined that CMU owed Governors "a duty

---

[1] Bouriez also asserted a claim for unjust enrichment, which he subsequently withdrew.

3

of full disclosure" in light of the "special" or "confidential" relationship between the two parties. App. 144-47. The Arbitration Award also held that in light of this relationship, Governors "justifiably relied" on CMU's misrepresentations. App. 147. The Arbitration Award did not make any findings in regard to CMU's relationship with Bouriez. Ultimately, CMU paid Governors approximately $10 million to satisfy the Arbitration Award.

Bouriez and CMU subsequently filed cross motions for summary judgment before the District Court regarding the effect of the Arbitration Award. Bouriez argued that the Arbitration Award conclusively established CMU's liability on his claims pursuant to the doctrine of collateral estoppel, while CMU posited that its satisfaction of the Arbitration Award precluded Bouriez from establishing the requisite proximate causation elements of his fraudulent and negligent misrepresentation claims. On August 30, 2007, the District Court agreed with CMU and granted summary judgment in CMU's favor. App. 85-108. In Bouriez II, this Court vacated and remanded that decision. 585 F.3d 765. In so doing, we explicitly noted that "[b]ecause the collateral estoppel issue does not affect the outcome of this appeal, we express no opinion with regard to that dispute." Bouriez II, 585 F.3d at 766 n.1.

On February 12, 2010, the District Court issued a Memorandum Opinion, holding that the Arbitration Award – which pertained only to the dispute between CMU and Governors – had a "preclusive effect" on the dispute between CMU and Bouriez. App. 6-13. Bouriez subsequently filed a renewed motion for summary judgment on his

4

negligent misrepresentation claim. CMU opposed this motion and filed its own motions for summary judgment, including one for summary judgment on Bouriez's negligent misrepresentation claim based upon the applicability of Pennsylvania's economic loss doctrine. On April 6, 2010, the District Court issued a Memorandum Opinion, granting Bouriez's motion and denying CMU's motions. App. 21-30. Specifically, the District Court held that "[a]s is implicit in the Court's ruling on the preclusive effect of the Arbitration Award [in the February 12, 2010 Memorandum Opinion], [Bouriez is] correct that said Award establishes [his] claim of negligent misrepresentation against CMU herein." App. 22. The District Court also determined that because Bouriez was "not bound by contract . . . [Bouriez's] negligent misrepresentation claim is not precluded by the economic loss doctrine." App. 26 (citation omitted).

Although neither Bouriez nor CMU previously moved for summary judgment as to Bouriez's claim for fraudulent misrepresentation, the District Court entered final judgment in favor of Bouriez following its April 6, 2010 Memorandum Opinion and ordered that the case be marked as closed. The parties thereafter filed a joint motion requesting that the District Court clarify its holding in regard to Bouriez's fraudulent misrepresentation claim. On April 26, 2010, the District Court entered a Revised Order and Judgment dismissing the claim for fraudulent misrepresentation "[b]ased on . . . [the] ruling that the Arbitration Award has preclusive effect on critical issues in this case . . . [and] the Arbitrator's finding that Governors could not sustain its burden of proving fraudulent misrepresentation." App. 19. This timely appeal followed.

5

II.

This is a diversity action governed by Pennsylvania law. Bouriez II, 585 F.3d at 770. The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) and we have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary, and we apply the same legal standard as the District Court. Vitalo v. Cabot Corp., 399 F.3d 536, 542 (3d Cir. 2005).

III.

CMU appeals the District Court's entry of summary judgment in favor of Bouriez with respect to Bouriez's negligent misrepresentation claim. Bouriez conditionally cross appeals the dismissal of his fraudulent misrepresentation claim. We will discuss each of Bouriez's claims in turn.

A.

In its Memorandum Opinion dated February 12, 2010, the District Court held that the Arbitration Award had a "preclusive effect" on the dispute between CMU and Bouriez.[2] The District Court's subsequent grant of summary judgment in favor of Bouriez on his negligent misrepresentation claim in the April 6, 2010 Memorandum Opinion relied wholly on this finding. As noted above, the District Court held that "[a]s

---

[2] There is no merit to Bouriez's claim that "CMU does not challenge this decision and, therefore, is bound by the Arbitration Award." Bouriez Br. at 23. CMU appeals from the District Court's April 26, 2010 Revised Order and Judgment, App. 16-17, which explicitly relies on the February 12, 2010 Memorandum Opinion to grant Bouriez summary judgment on his claim for negligent misrepresentation, App. 19-20. CMU also consistently argues on appeal that "the District Court stretched precepts of collateral estoppel and judicial efficiency beyond their breaking point." CMU Br. at 22.

is implicit in the Court's ruling on the preclusive effect of the Arbitration Award [in the February 12, 2010 Memorandum Opinion], [Bouriez is] correct that said Award establishes [his] claim of negligent misrepresentation against CMU herein." App. 22.

The District Court's reliance on the Arbitration Award to establish conclusively Bouriez's claim for negligent misrepresentation constitutes a misapplication of the doctrine of collateral estoppel. Pursuant to Pennsylvania law:

> Collateral estoppel is used offensively when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action against another party. . . .
>
> [C]ollateral estoppel is valid if 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party in privity or in privity with a party to the prior adjudication, 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

Shaffer v. Smith, 673 A.2d 872, 874 (Pa. 1996) (internal quotations and citation omitted).[3] "Collateral estoppel is based on the policy that 'a losing litigant deserves no re-match after a defeat fairly suffered, in adversarial proceedings, on an issue identical in

---

[3] This is a case of so-called "offensive non-mutual collateral estoppel," as Bouriez is attempting to estop CMU from litigating issues that CMU previously lost in its arbitration with third-party Governors. See generally Burlington N. R.R. Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1232 (3d Cir. 1995). The Supreme Court has noted that this brand of estoppel may create perverse incentives: "Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330 (1979). This is precisely what appears to have happened in this case: Bouriez successfully opposed arbitrating his dispute with CMU, but now seeks to use the findings from that very same arbitration to estop CMU from litigating a defense before the District Court.

substance to the one he subsequently seeks to raise.'" Plaxton v. Lycoming Cnty. Zoning Hearing Bd., 986 A.2d 199, 208 (Pa. Commw. Ct. 2009) (quoting McGill v. Southwark Realty Co., 828 A.2d 430, 434 (Pa. Commw. Ct. 2003)).

The District Court's February 12, 2010 Memorandum Order determined that all four elements for collateral estoppel were met in this case. In regard to the first element – that the issue decided in the prior adjudication be identical to the one presented in the later action – the District Court simply held "that the essential issues decided in the arbitration are identical to the ones presented in this case." App. 11. In two significant respects, this conclusion is erroneous in regards to Bouriez's negligent misrepresentation claim.

First, any claim for negligence, including a claim for negligent misrepresentation, requires the existence of a duty. See Bouriez II, 585 F.3d at 771 (listing the elements of a negligent representation claim and including "a duty recognized by law, requiring the actor to conform to a certain standard of conduct for protection of others against unreasonable risks" (internal quotations omitted)). As noted, the Arbitration Award determined that CMU owed Governors a duty in light of the two parties' "confidential" or "special" relationship. See App. 144-47. The Arbitration Award did not, however, discuss the relationship between CMU and Bouriez, and thus never held that CMU owed Bouriez any legally cognizable duty.[4]

___

[4] Indeed, unlike CMU and Bouriez, CMU and Governors had a contractual relationship, and the existence of such a contractual relationship is a significant component in

8

Second, and related, an essential element of any negligent misrepresentation claim is that "injury must result to the party acting in justifiable reliance on the misrepresentation." Gibbs v. Ernst, 647 A.2d 882, 890 (Pa. 1994). In this case, the Arbitration Award relied on the existence of the "special" or "confidential" relationship just noted to conclude that Governors "justifiably relied" on CMU's misrepresentations. App. 147. Again, the Arbitration Award did not discuss the relationship between CMU and Bouriez, and as a result, there is no finding in the Arbitration Award that Bouriez justifiably or even actually relied on any representations made by CMU.[5]

Accordingly, in regard to both of these issues, the District Court erred in relying on the Arbitration Award alone to establish Bouriez's negligent misrepresentation claim against CMU. Collateral estoppel "forecloses the relitigation of an issue of law or fact only when . . . the legal or factual issues are identical." Yonkers v. Donora Borough, 702 A.2d 618, 620 (Pa. Commonw. Ct. 1997) (emphasis added). For the reasons stated, the legal and factual issues resolved by the Arbitration Award are not identical to the legal and factual issues presented by this case. We will therefore vacate and remand with

determining whether a "special" or "confidential" relationship exists under Pennsylvania law. See Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 612 (3d Cir. 1995) ("Pennsylvania courts analyzing whether there was a duty to speak [resulting from a confidential relationship] rely almost exclusively on the nature of the contract between the parties and the scope of one party's reliance on the other's representations." (emphasis added)).

[5] Moreover, although there is some overlap between the alleged representations made by CMU to both Governors and Bouriez in 1997, Bouriez's claim for negligent misrepresentation also relies on different representations made by CMU solely to Bouriez in 1999, which were never discussed in the Arbitration Award.

instructions for the District Court to determine whether CMU owed Bouriez a legally cognizable duty under Pennsylvania law and whether Bouriez actually and justifiably relied on CMU's misrepresentations. CMU is entitled to litigate a defense on these issues before the District Court in the first instance.

In remanding this case, we also correct an error in the District Court's analysis regarding Pennsylvania's economic loss doctrine. The economic loss doctrine, stated in its most general form, precludes recovery in tort if the plaintiff suffers a loss that is exclusively economic, unaccompanied by an injury to either property or person. See Excavation Techs., Inc. v. Columbia Gas Co. of Pa., 985 A.2d 840, 841 n.3 (Pa. 2009). In determining that the economic loss doctrine did not apply in this case, the District Court relied primarily on the assumption that because Bouriez was "not bound by contract . . . [Bouriez's] negligent misrepresentation claim is not precluded by the economic loss doctrine." App. 26 (citation omitted).

This is wrong as a matter of Pennsylvania law. Pennsylvania has not limited the applicability of the economic loss doctrine to situations in which the parties are bound by a contractual relationship or are otherwise in privity with one another. Rather, as we have noted in two recent cases, Pennsylvania's economic loss doctrine may apply even in the absence of a contractual duty. See Azur v. Chase Bank, 601 F.3d 212, 223-24 (3d Cir. 2010); Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008); see also Am. Stores Props., Inc. v. Spotts, Stevens & McCoy, Inc., 648 F. Supp. 2d 707, 713 (E.D. Pa. 2009) (collecting cases and noting that "controlling Federal and

Pennsylvania state law hold that privity of contract is not required for application of the economic loss doctrine to [] negligence claims"). The District Court thus erred in holding that the absence of a contractual remedy, by itself, precluded the applicability of the economic loss doctrine.

Pennsylvania has, however, carved out an exception to the economic loss doctrine for claims of negligent misrepresentation asserted pursuant to Section 552 of the Restatement (Second) of Torts. See Excavation Techs., Inc. v. Columbia Gas Co. of Pa., 985 A.2d 840 (Pa. 2009); Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270 (Pa. 2005). Section 552 "sets forth the parameters of a duty owed when one supplies information to others, for one's own pecuniary gain, where one intends or knows that the information will be used by others in the course of their own business activities." Azur, 601 F.3d at 223 (internal quotations omitted). Accordingly, on remand, in the course of determining whether CMU owes Bouriez any legally cognizable duty, the District Court should determine whether CMU owes Bouriez a duty pursuant to Section 552, as such a duty would preclude the application of Pennsylvania's economic loss doctrine.

B.

In the April 26, 2010 Revised Order and Judgment, the District Court dismissed Bouriez's claim for fraudulent misrepresentation "[b]ased on . . . [the] ruling that the Arbitration Award has preclusive effect on critical issues in this case . . . [and] the

11

Arbitrator's finding that Governors could not sustain its burden of proving fraudulent misrepresentation." App. 19.

This holding misconstrues the doctrine of collateral estoppel, which, as noted above, only applies when "the party against whom [collateral estoppel] is asserted was a party or in privity with a party to the prior adjudication." Capek v. Devito, 767 A.2d 1047, 1051 (Pa. 2001). In this case, CMU was the party to the arbitration with Governors. Accordingly, the District Court erred in relying on the Arbitration Award to collaterally estop Bouriez's claim for fraudulent misrepresentation. Cf. Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir. 2009) ("[T]here is generally a bar against applying collateral estoppel to those who were not parties in the prior litigation.").[6]

CMU concedes this point, but invites this Court to extrapolate from the District Court's June 22, 2006 one-page order granting CMU's motion in limine to exclude any claim by Bouriez for punitive damages as somehow also constituting a dismissal of Bouriez's claim for fraudulent misrepresentation. See App. 5. Specifically, CMU posits that in the June 22, 2006 order, the District Court ruled "that the intent to deceive necessary for a fraud-based award of punitive damages is lacking in this case – and this is

---

[6] Furthermore, Bouriez's claim for fraudulent misrepresentation – like his claim for negligent misrepresentation – is predicated not only on misrepresentations that CMU made to Governors in 1997, but also on misrepresentations that CMU made only to Bouriez in 1999. See supra note 5.

the same intent necessary to support any claim for fraudulent misrepresentation." CMU Br. at 43.

We disagree. As an initial matter, the District Court provided no rationale for its holding that Bouriez is not entitled to an award of punitive damages, and so it is purely hypothetical to assume that the holding was based on the lack of intent. And, in any event, CMU's argument fails as a matter of law. In Pennsylvania, a plaintiff may establish the "intent to deceive" adequate to support a claim for fraud but still fail to produce the requisite "malice" necessary to support an award of punitive damages. Cf. Tunis Bros. Co. v. Ford Motor Co., 952 F.2d 715, 740-41 (3d Cir. 1991) (noting that under Pennsylvania law "fraud is not alone a sufficient basis upon which to premise an award of punitive damages," and that "[t]he rule, rather, is that for punitive damages to be awarded there must be acts of malice, vindictiveness and a wholly wanton disregard of the rights of others." (quoting Smith v. Renaut, 564 A.2d 188, 193 (Pa. Super. Ct. 1989))). We will therefore vacate and remand to the District Court to resolve Bouriez's fraudulent misrepresentation claim in the first instance.[7]

## IV.

For the foregoing reasons, we will vacate and remand for proceedings consistent with this opinion.

---

[7] Since we vacate the District Court's entry of judgment in favor of Bouriez, we will not address the various arguments relating to damages on this appeal.

13