J-A26005-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BARBARA CLAY, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| FIRST NATIONAL BANK | : : | No. 279 WDA 2024 |
| Appellant | : | |

Appeal from the Order Entered March 1, 2024
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-23-8768

BEFORE: BOWES, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                **FILED: January 21, 2025**

First National Bank of Pennsylvania ("FNB") appeals from the order overruling its preliminary objection to compel arbitration in defense of the class action suit brought against it by Barbara Clay. We reverse and remand for the case to proceed to arbitration.

This litigation challenges overdraft and insufficient fund fees imposed by FNB upon certain FNB checking accounts. Ms. Clay, who filed the purported class action suit, opened a checking account at 1st Mariner Bank in 1997. Since then, ownership of the account has changed twice. In 2018, Howard Bank acquired 1st Mariner Bank, and in 2022, FNB acquired Howard Bank. Ms. Clay continued to operate the checking account throughout these changes. Notably, in January of 2022, FNB sent to then-Howard Bank customers, including Ms. Clay, a welcome packet composed of, *inter alia*, the 2022 FNB

Deposit Account Agreement ("FNB Agreement"), a fee schedule, and an overdraft notification.

Ms. Clay filed the instant class action lawsuit against FNB based upon certain fees FNB allegedly imposed on her checking account. She explained that her account was "governed by [FNB's] written, standardized account documents." Complaint, 7/19/23, at 9 (capitalization altered). She did not attach any documentation to her complaint, averring that such was only available to FNB. Nonetheless, Ms. Clay opined that the FNB account documents contained certain "promises" that were broken by FNB's practices, and thus FNB's "account documents misrepresent[ed its] true debit card processing and overdraft practices." *Id*. at 9-10 (capitalization altered). Therefore, she defined the class as "all [FNB] checking account holders in Pennsylvania who, during the applicable statute of limitations, were charged [overdraft] fees on debit card transactions that were authorized into a positive available balance" or "were charged multiple fees on the same item[.]" *Id*. at 21 (capitalization altered).

Ms. Clay cited two examples "[i]n support of her claim[:]" (1) an overdraft fee imposed on April 8, 2021, and (2) an insufficient funds fee levied on September 15, 2021. *Id*. at 12-13. Notably, Howard Bank imposed the offending fees. Ms. Clay did not attribute fault to Howard Bank for the alleged 2021 malfeasance, nor did she contend that FNB assumed the liabilities of Howard Bank upon acquisition for those charges. Rather, she claimed that FNB itself violated the covenant of good faith and fair dealing when FNB

"breached promises made to [Ms. Clay] and all members of the proposed class" by charging overdraft fees when the transactions did not deplete the account and in "charg[ing] multiple fees on a single item[,]" and used the 2021 transactions as examples of her "[e]xperiences[.]" *Id*. at 12-13, 25-26.

FNB filed a motion to compel arbitration, as well as preliminary objections pursuant to Pa.R.Civ.P. 1028(a)(6) (regarding agreements for alternative dispute resolution), based upon the arbitration clause within the FNB Agreement.[1]  Ms. Clay submitted a brief in opposition to FNB's request to compel arbitration.  Specifically, she averred that:  (1) she lacked notice of the arbitration provision; (2) FNB's arbitration clause did not apply retroactively to her claims against Howard Bank under Howard Bank's deposit agreement; and (3) retroactive application of the arbitration agreement without providing her an opportunity to opt out would violate the implied covenant of good faith and fair dealing.  *See* Brief in Opposition, 11/17/23, at 1-2.  FNB countered with a reply brief, rebuffing her arguments based upon the allegations within her initial complaint.  The court denied FNB's motion to compel arbitration on March 1, 2024.  In so doing, it concluded that the arbitration provision in the FNB Agreement did not apply to the 2021 fees imposed on Ms. Clay's account by Howard Bank.  *See* Trial Court Opinion, 4/29/24, at 3.

---

[1] FNB also sought, *inter alia*, to dismiss the complaint on its merits.  Since the refusal to send this case to arbitration is the only decision over which we have jurisdiction in this appeal, we do not consider any substantive challenges to Ms. Clay's suit.

This timely appeal followed.[2] Both the trial court and FNB complied with the dictates of Pa.R.A.P. 1925. FNB presents the following issues for our consideration:

1. Did the trial court err and/or abuse its discretion by failing to enforce the arbitration provision in the [FNB Agreement]?

2. Did the trial court err and/or abuse its discretion by failing to accept the facts and averments contained in FNB's motion as uncontroverted and undisputed because [Ms. Clay] did not file any response to the motion other than her brief?

FNB's brief at 4 (capitalization altered). We consider these issues in light of our well-settled framework:

Our standard of review of a claim that the trial court improperly overruled preliminary objections in the nature of a petition to compel arbitration is clear. Our review is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.

In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement.

Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary.

Further, we are guided by the following principles:

_____

[2] The denial of a petition to compel arbitration is an interlocutory order appealable as of right pursuant to Pa.R.A.P. 311(a)(8) (appealable by statute) and 42 Pa.C.S. § 7320(a)(1) (providing that an appeal may be taken from an order denying a motion to compel arbitration).

- 4 -

> (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.

***Fineman, Krekstein & Harris, P.C. v. Perr***, 278 A.3d 385, 389 (Pa.Super. 2022) (cleaned up). In light of this two-part inquiry, we first consider whether a valid arbitration agreement exists between the parties, and then whether it covers the dispute.

FNB avers that the FNB Agreement governs the relationship between FNB and Ms. Clay and contains the relevant arbitration provision.[3] ***See*** FNB's brief at 23. By way of background, Ms. Clay signed a signature card with 1st Mariner Bank when she opened her account in 1997. The card granted 1st Mariner Bank the ability to amend the terms of its agreement with Ms. Clay, but it did not explicitly extend that right to successor banks. The record is silent as to whether Howard Bank and Ms. Clay signed any agreement. When FNB merged with Howard Bank, the record reveals that FNB sent to Ms. Clay

---

[3] Our review of the record demonstrates that neither the trial court nor Ms. Clay squarely answers the first question. Rather, they conflate the two by focusing upon whether the agreement is valid as applied to the dispute, *i.e.*, whether it can be applied retroactively to the 2021 Howard Bank fees. Ms. Clay does not otherwise challenge the validity of the FNB Agreement, to which she attempts to hold FNB accountable. Rather, she contests the applicability of the arbitration clause to fees imposed by Howard Bank in 2021. ***See*** Ms. Clay's brief at 8, 17. Given the interrelated nature of this framework in the underlying matter, we deem it appropriate to address both questions. We consider Ms. Clay's specific contention in turn when we reach the second aspect of the arbitrability test.

a welcome packet, which included the FNB Agreement. However, FNB did not ask her to sign anything.

Since Ms. Clay did not sign the FNB Agreement, she was not automatically bound by the arbitration clause contained therein. *See Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa.Super. 2012) ("In general, only parties to an arbitration agreement are subject to arbitration." (cleaned up)). Nonetheless, we find that the doctrine of equitable estoppel prevents her from avoiding the terms of the arbitration clause. Our Supreme Court explained the doctrine thusly:

> Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment may be enforced in equity.

*Kreutzer v. Monterey Cnty. Herald Co.*, 747 A.2d 358, 361 (Pa. 2000) (cleaned up).

Here, Ms. Clay continued to use her checking account after FNB sent her the welcome packet, which explained how her account would change under FNB's ownership and included the terms of the FNB Agreement. If Ms. Clay did not find these changes satisfactory, she could have followed the procedures outlined within the agreement to close her account and conduct her checking business elsewhere. *See* Affidavit of Karen Crosetto in Support of Defendant's Preliminary Objections to Plaintiff's Complaint, 10/16/23, at

Exhibit B-5 (FNB Agreement, 1/23/22, at 23). She instead chose to continue using her FNB checking account, and, indeed, filed the instant suit based upon FNB's alleged violations of the terms of the FNB Agreement. Since Ms. Clay seeks to enforce the portions of the agreement that benefit her, she is equitably estopped from attempting to avoid its burdens. *See Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 295 (3d Cir. 2004) (explaining that equitable estoppel prohibits an individual "from challenging an agreement that includes an arbitration clause when that person embraces the agreement and directly benefits from it" (cleaned up)). Accordingly, we conclude that the FNB Agreement properly governs the relationship between FNB and Ms. Clay.

We now turn to the arbitration provision contained therein to ascertain whether it applies to the instant dispute. To begin, we set forth the relevant language of the arbitration clause:

**ARBITRATION AND WAIVER OF CLASS ACTION**

We (as in you and us) agree that, at the request of either party, any and all claims, disputes or controversies between you and us, and any claim by either of us against the other (or the employees, officers, directors, agents or assignees of the other) and any claim arising from or relating to your Account, this Agreement, any other agreements you may enter into with us for services related to your Account, the transactions on your Account, or any other account you previously, now or may later have with us, this agreement to arbitrate all disputes, your agreement not to bring, join or participate in any purported class action, or representative proceeding, regarding, including, but not limited to, collection of sums overdrawn on the Account, alleging fraud or misrepresentation, whether under common law or pursuant to Federal, state or local statute, regulation or ordinance, including disputes as to the matters subject to arbitration, or otherwise shall be resolved by binding individual (and not joint) arbitration by the

American Arbitration Association (AAA). The arbitrator(s) will decide if any inconsistency exists between the AAA rules and these arbitration provisions contained herein. If any such inconsistency exists, the arbitration provisions contained herein will control and supersede the AAA rules.

*Id*. at Exhibit B-5 (FNB Agreement, 1/23/22, at 25).

Plainly, the clause mandates that the parties arbitrate "any and all claims" between them, as well as any disputes arising from or relating to the checking account or the FNB Agreement. *Id*. Given this broad language, it is apparent that the parties agreed to arbitrate disputes between them, as well as any claims that pertained to Ms. Clay's checking account or the agreement.

It is well-settled that "a complaint's substance, not its styling, is to control whether the complainant party must proceed to arbitration or may file in the court of common pleas." *Fineman, Krekstein & Harris, P.C.*, 278 A.3d at 390 (cleaned up). In her complaint, Ms. Clay averred that FNB's practices violated the express and implied terms of the FNB Agreement by assessing certain fees upon her checking account activities. She claimed that FNB itself committed such violations, and additionally cited as examples the 2021 fees. Although Howard Bank was the account operator in 2021, Ms. Clay only cited those fees as examples and instead generally filed a complaint against FNB based on the FNB Agreement and FNB's practices, not upon any Howard Bank agreement in place at the time the 2021 fees were imposed. Insofar as she attempts to hold FNB accountable for the 2021 fees imposed by Howard Bank, we discern no reason why that would remove the suit from the arbitration clause's scope. First, the clause is not limited to prospective

application. Second, and more importantly, Ms. Clay framed any such claim as between herself and FNB in the complaint. Since it is a dispute between the parties, it falls within the FNB Agreement's arbitration clause.

Moreover, we observe that Ms. Clay could have asserted a successor liability claim against FNB based upon the Howard Bank fees and any Howard Bank agreement in place at that time, but she did not. That the complaint may have been unartfully pled does not render the arbitration clause contained within the contract under which Ms. Clay is suing inapplicable. Rather, the matter unequivocally concerns a dispute between Ms. Clay and FNB and is related to the FNB Agreement and FNB's adherence to the terms thereof. Clearly, the suit falls squarely within the scope of the FNB Agreement's arbitration clause.

Based on the foregoing, we conclude the trial court erred in denying FNB's motion to compel arbitration. Therefore, we reverse the trial court's order denying FNB's motion and remand for the parties to engage in arbitration.[4] In light of our disposition, we agree with FNB that the trial court

---

[4] We observe that FNB implores us to require Ms. Clay to proceed to arbitration on an individual basis because the arbitration clause also operated to waive her right to participate in certain class actions. *See* FNB's brief at 48-50. In its Rule 1925(b) statement, FNB focused solely on whether the court erred in denying its motion to compel arbitration, not the manner in which arbitration should be conducted if compelled. At no point did FNB put the trial court on notice that it intended to challenge in this appeal the class-action nature of the suit. Since FNB waived this claim for purposes of this appeal, we decline its invitation to address it. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

should stay the case pending completion of arbitration proceedings. **See** FNB's brief at 50-51. Accordingly, we direct that, upon remand, the court grant FNB's motion to compel arbitration and stay the proceedings until arbitration is completed.[5] **See** 42 Pa.C.S. § 7321.8(f) ("An action or proceeding allegedly involving an issue subject to arbitration shall be stayed if a court order to proceed with arbitration has been made[.]").

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/21/2025

---

[5] In light of our disposition, we need not address FNB's second issue.