**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEPHAN NAMISNAK; FRANCIS FALLS, | No. 18-15860 |
| *Plaintiffs-Appellees*, | D.C. No. 3:17-cv-06124-RS |
| v. | |
| UBER TECHNOLOGIES, INC.; RASIER, LLC, | OPINION |
| *Defendants-Appellants.* | |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted May 14, 2020
San Francisco, California

Filed August 24, 2020

Before: J. Clifford Wallace and Ryan D. Nelson, Circuit
Judges, and Frederic Block,[*] District Judge.

Opinion by Judge R. Nelson

---

[*] The Honorable Frederic Block, United States District Judge for the
Eastern District of New York, sitting by designation.

# SUMMARY**

## Arbitration

The panel affirmed the district court's order denying in part the motion of defendant Uber Technologies, Inc., to compel arbitration of claims brought under the Americans with Disabilities Act.

Plaintiffs sued Uber for not providing a wheelchair-accessible ride-sharing option, known as "uberWAV," in their hometown of New Orleans.  Two plaintiffs never downloaded the Uber App and therefore did not sign Uber's arbitration agreement, included in its Terms and Conditions, before filing suit.

The panel held that plaintiffs plausibly alleged sufficient facts to establish Article III standing.  The panel held that plaintiffs sufficiently alleged injury in fact pursuant to the "deterrent effect doctrine," which recognizes that when a plaintiff who is disabled has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, the plaintiff need not engage in the "futile gesture" of attempting to gain access.  The panel distinguished a Seventh Circuit case in which uberWAV was available to the plaintiff, who therefore lacked standing.  The panel held that plaintiffs also plausibly alleged the causation and redressability elements of standing because their alleged injury was directly traceable to Uber's refusal to offer

---

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

uberWAV in New Orleans, and an injunction would redress that injury by requiring Uber to offer access to its services.

The panel further held that, under California law, plaintiffs were not equitably estopped from avoiding arbitration because their ADA claims did not rely on Uber's Terms and Conditions.

## COUNSEL

Bryan Killian (argued) and Stephanie Schuster, Morgan Lewis & Bockius LLP, Washington, D.C.; Anne Marie Estevez, Morgan Lewis & Bockius LLP, Miami, Florida; for Defendants-Appellants.

Karla Gilbride (argued), Public Justice P.C., Washington, D.C.; Garret DeReus, Bizer & Dereus LLC, New Orleans, Louisiana; William Most, Aqua Terra Aeris Law Group, Albany, California; for Plaintiffs-Appellees.

## OPINION

R. NELSON, Circuit Judge:

Plaintiffs Stephen Namisnak and Francis Falls ("Plaintiffs") sued Uber Technologies, Inc. ("Uber") under the Americans with Disabilities Act ("ADA") for not providing a wheelchair-accessible ride-sharing option in their hometown of New Orleans. But they never downloaded the Uber App—and therefore did not sign Uber's arbitration agreement—before filing suit. According to Uber, because Plaintiffs do not have the Uber App and therefore do not use Uber, they cannot satisfy the injury-in-

fact prong of the Article III standing analysis. And even if they can, Uber argues, they should be equitably estopped from avoiding Uber's arbitration agreement because they consciously avoided downloading the Uber App and signing the Terms and Conditions. The district court disagreed. So do we. We therefore affirm.

# I

Uber is a technology company that creates smartphone applications. One of those applications is called the Uber App, which connects those looking for a ride with drivers looking to provide rides. To take advantage of this service, riders must download the Uber App on their smartphones. Before using the Uber App, they must also agree to Uber's Terms and Conditions, which include an arbitration agreement.

Signing the arbitration agreement allows riders access to the Uber App and the ability to hail drivers to give them rides to their desired location. Depending on the location, various types of rides are available. Many riders use "UberX," which is a ride in a sedan. Others choose "Uber Black," which is a ride in a luxury sedan. Still others elect to use "UberXL," which provides rides for larger groups, including families. Finally, in at least San Francisco, Portland, and Washington D.C., riders can use uberWAV, which provides rides to those in need of wheelchair-accessible vehicles, or WAVs.

Plaintiffs Namisnak and Falls would like to use the uberWAV option due to their disabilities. Namisnak has muscular dystrophy. Falls is paraplegic following a spinal cord injury. But neither Plaintiff can use the uberWAV service because it is not available in New Orleans, where they live. So they never downloaded the Uber App or tried

to hail an uberWAV ride.  Instead, they filed suit under the ADA, alleging that Uber discriminated against them by not providing uberWAV in New Orleans.  As relief, they sought an injunction requiring Uber to provide uberWAV in New Orleans.

In the operative complaint, Plaintiffs alleged that they could not "successfully use Uber's services because Uber does not offer a button, option, or icon in the Uber App for the New Orleans market which would allow a wheelchair user to summon a van-equipped vehicle."  They further alleged that they were "presently aware that if they tried to install and use the Uber Application that they would experience serious difficulty" due to Uber's failure to provide an accommodating service.  Finally, they alleged that they "plan to and will attempt to use the Uber Application and Uber's programs, services, and accommodations in the future as patrons should those programs, services, and accommodations become wheelchair-accessible."

Uber moved to compel Plaintiffs—as well as a third plaintiff who had downloaded the Uber App and signed Uber's arbitration agreement—to arbitrate their claims.  The district court granted the motion in part and denied it in part.  According to the district court, the third plaintiff was required to arbitrate his claims because he signed Uber's Terms and Conditions—including the arbitration agreement—when he downloaded the Uber App.  But the same was not true for Falls and Namisnak.  They had not downloaded the Uber App or signed the arbitration agreement, so they could not be bound by it.  Nor could they, according to the district court, be equitably estopped from avoiding arbitration because their claims were not intertwined with or reliant on Uber's Terms and Conditions

as required under California law. Uber now appeals that decision. We have jurisdiction under 9 U.S.C. § 16(a)(1)(B).

## II

Uber argues for the first time on appeal that Plaintiffs have not plausibly alleged sufficient facts to establish each element of the standing inquiry. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To establish standing, a plaintiff must demonstrate (1) a concrete and particularized injury that is actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's challenged conduct; and (3) a likelihood that a favorable decision will redress that injury." *Nat'l Family Farm Coalition v. EPA*, — F.3d —, 2020 WL 4197528, at \*6 (9th Cir. 2020) (quoting *Pyramid Lake Paiute Tribe of Indians v. Nev., Dep't of Wildlife*, 724 F.3d 1181, 1187 (9th Cir. 2013)). "For purposes of ruling on a motion to dismiss for want of standing, both trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). In applying this standard, we must determine whether the plaintiffs have "clearly allege[d] facts demonstrating each element" of standing. *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotation marks and alterations omitted). Plaintiffs have met that standard here.

## A

The first element of the Article III standing analysis—injury in fact—can be satisfied in ADA cases by showing that the plaintiff was deterred from attempting to visit a location or use a service because of alleged ADA noncompliance. *Civil Rights Educ. and Enforcement Ctr. v.*

*Hospitality Props. Tr.*, 867 F.3d 1093, 1098–99 (9th Cir. 2017).  This "deterrent effect doctrine" recognizes that "[w]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury."  *Id.* (quoting *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002)).  This doctrine was first set out in *Teamsters v. United States*, 431 U.S. 324 (1977), in which the Supreme Court held that an employment-discrimination plaintiff need not take "futile gesture[s]"—like applying for a job he knows he will not get due to the employer's discrimination—that would merely subject him to the "humiliation of explicit and certain rejection."  *Id.* at 365–66.

We have since applied this doctrine in several cases.  In *Civil Rights Education*, for example, wheelchair-bound hotel patrons who did not visit the hotels they were suing nonetheless satisfied injury-in-fact under the "deterrent effect doctrine" because they knew that the hotels did not provide a "shuttle service for mobility-impaired people" and intended "to visit the relevant hotels" once the hotels' ADA "non-compliance [was] cured."  867 F.3d at 1097, 1099.  Similarly, in *Pickern*, a wheelchair-bound shopper had standing to sue a grocery store whose "architectural barriers" made it difficult to gain access to the store because he alleged that "he ha[d] actual knowledge of the barriers to access at that store" and "would shop at [the store] if it were accessible" to him.  293 F.3d at 1135–36, 1138; *see also Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1040–41 (9th Cir. 2008) (finding deterrent-effect standing).

This case is no different.  Plaintiffs allege they are aware Uber does not offer uberWAV in New Orleans; that they cannot use the Uber App because of its failure to offer uberWAV; that they plan to use the Uber App if it becomes wheelchair-accessible; and that they "presently fear that they will encounter the mobility-related barriers which exist within Uber's Application and services."  Downloading the Uber App and creating an account are attempts to gain access to the services Uber provides.  But Plaintiffs have actual knowledge that Uber does not provide its uberWAV service in New Orleans.  That barrier to entry makes downloading the Uber App and creating an account a futile gesture, which Plaintiffs need not engage in to show injury in fact.

Uber's arguments to the contrary are unpersuasive.  First, Uber argues that downloading the Uber App and creating an account is not "humiliating" and therefore cannot meet what it calls the "humiliating-yet-futile" standard.  No such standard exists in our caselaw.  In our Circuit, the proper question is whether Plaintiffs have actual knowledge of and are deterred by allegedly illegal barriers to access. *See Civil Rights Educ.*, 867 F.3d at 1098; *Pickern*, 293 F.3d at 1137–38.  Plaintiffs have satisfied that standard here.

Second, Uber argues Plaintiffs have not plausibly alleged injury in fact because there may be other reasons they were deterred.  For example, Uber says, Plaintiffs may not have smartphones, credit cards, access to the App Store or Google Play Store, or a desire to assent to the Terms and Conditions of the Uber App.  But our caselaw does not require Plaintiffs to specifically allege that they possess means to visit the accommodation.  In *Pickern*, for example, we did not require the plaintiff to allege he had a car or other means of transportation to visit the allegedly discriminatory grocery store, even though the plaintiff lived seventy miles

from it. *Pickern*, 293 F.3d at 1135. Instead, we held "in stating that he is currently deterred from attempting to gain access . . . [the plaintiff] has stated sufficient facts to show concrete, particularized injury." *Id.* at 1137. So too here.

Finally, Uber argues that we should follow *Access Living v. Uber Technologies, Inc.*, 958 F.3d 604 (7th Cir. 2020), in which the Seventh Circuit held that a plaintiff who had not downloaded the Uber App or created an account lacked standing to sue Uber over alleged ADA violations in Chicago. *Id.* at 614. We decline to do so because that case was critically different from this one. Uber offers uberWAV in Chicago. So the *Access Living* plaintiff was suing, not because Uber refused to offer uberWAV as a categorical matter, but because Uber allegedly did not offer wheelchair-accessible vehicle service on equivalent terms with its standard rideshare offerings. *Id.* And the Seventh Circuit explicitly acknowledged that the outcome may have been different if uberWAV was not offered in Chicago. *Id.*

We agree with the Seventh Circuit that this differing fact—that Uber does not offer uberWAV at all in New Orleans—is a dispositive distinction in this case. Where uberWAV is offered, it makes sense that a plaintiff would be required to download the Uber App so that a proper comparison of available services may be made in support of an alleged ADA claim. But the same is not true where, as here, uberWAV is not offered at all in New Orleans. Moreover, there was no jurisdictional discovery and therefore no evidence that Plaintiffs had the opportunity to use uberWAV in a city where it is offered—such as Chicago—and failed to do so. Such evidence could undermine the futility analysis here. In short, in a case like this, requiring a plaintiff to download the Uber App is

exactly the futile gesture that need not be taken to support a showing of injury in fact.

## B

Uber also argues that Plaintiffs have not plausibly alleged causation and redressability. Causation exists where the alleged injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks and alterations omitted). Redressability, by contrast, is satisfied where it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks omitted). Plaintiffs' allegations meet both standards here.

Uber argues that causation is lacking because even if Uber offered uberWAV in New Orleans, Plaintiffs' ability to obtain rides would depend on drivers with wheelchair-accessible vehicles offering rides through the service. And Plaintiffs' alleged injury is not redressable, Uber argues, for the same reason. Any injunction requiring Uber to provide uberWAV in New Orleans would not guarantee Plaintiffs access to uberWAV because drivers might elect not to purchase wheelchair-accessible vehicles and drive them for Uber.

In support of these arguments, Uber cites *Allen v. Wright*, 468 U.S. 737 (1984). In that case, parents of African-American children sued the IRS, alleging that they were injured because the IRS's decision to give tax exemptions to racially discriminatory schools meant that their children could not receive an education in a desegregated school. *Id.* at 758. But the Supreme Court held that any such injury was not fairly traceable to the IRS's decision to offer a tax

exemption because the schools could continue to segregate even if the tax exemption were no longer offered. *Id.*

Here, by contrast, Uber drivers cannot offer uberWAV services without Uber first making that option available. Uber, and Uber alone, can rectify any alleged violation of the ADA by providing an uberWAV option. Plaintiffs' alleged injury is therefore directly traceable to Uber's refusal to offer uberWAV in New Orleans. And an injunction would redress that injury by requiring Uber to offer access to its services. That another cause may exist for Plaintiffs' alleged injuries—the possibility that Uber drivers will not drive wheelchair-accessible vehicles—does not change that conclusion. In light of our obligation to "accept as true all material allegations of the complaint and [to] construe the complaint in favor of the complaining party," *Maya*, 658 at 1068, we conclude that Plaintiffs' alleged injuries would not exist absent Uber's actions, and these injuries cannot be redressed without enjoining Uber to comply with the ADA. Plaintiffs have therefore plausibly alleged causation and redressability.

## III

Uber also argues that the district court erred in denying its motion to compel arbitration, a decision we review de novo. *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004). Uber's only argument in favor of reversal is that Plaintiffs should be equitably estopped from avoiding arbitration. We disagree.

Generally, parties who have not assented to an arbitration agreement cannot be compelled to arbitrate under its terms. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002). But under California law, which applies here, nonsignatories to an agreement with an arbitration clause can

be compelled to arbitrate for a variety of reasons. One such reason, and the one Uber seeks to apply here, exists when a nonsignatory should be equitably estopped from arguing that he cannot be bound by an arbitration clause. That exception applies when there are "claims that are dependent upon or inextricably intertwined with the obligations imposed by the contract containing the arbitration clause." *JSM Tuscany, LLC v. Superior Court*, 123 Cal. Rptr. 3d 429, 445 (Ct. App. 2011).

Uber argues that Plaintiffs' standing theory—that they may sue without downloading the Uber App and assenting to its Terms and Conditions because downloading the Uber App would be futile—is inextricably intertwined with the Terms and Conditions. That is so, according to Uber, because Plaintiff's standing theory only works if they are assumed to be like another party who downloaded the Uber App and faced discrimination. But equitable estoppel is "inapplicable where a plaintiff's allegations reveal no claim of any violation of any duty, obligation, term or condition" imposed by the contract. *In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017) (applying California law) (citations and internal quotations omitted). That is because equitable estoppel exists for situations in which a nonsignatory is "relying on an agreement for one purpose while disavowing the arbitration clause of the agreement." *Goldman v. KPMG, LLP*, 92 Cal. Rptr. 3d 534, 551 (Ct. App. 2009). So where "allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the operating agreements" and there is no "claim founded in or even tangentially related to any duty, obligation, term or condition imposed by the operating agreements . . . the claims are fully viable without reference to the terms of those agreements" and equitable estoppel does not apply. *Id.*

That is the case here.  Plaintiffs do not rely on Uber's Terms and Conditions.  None of Uber's Terms and Conditions is mentioned in the operative complaint, and the only Terms or Conditions Uber has mentioned is the arbitration clause.  Plaintiffs' case arises entirely under the ADA.  And Plaintiffs' ADA claims are fully viable without any reference to Uber's Terms and Conditions.  So equitable estoppel does not apply.  The district court was therefore correct to deny Uber's motion to compel arbitration.

\* \* \*

Plaintiffs have pled sufficient facts to establish Article III standing.  And because they did not agree to Uber's Terms and Conditions and their claims are not inextricably intertwined with those Terms, they are not subject to the arbitration clause.

**AFFIRMED.**